[Cite as *State v. Schrock*, 2013-Ohio-441.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | | **CASE NO. 2012-P-0022** |
| - vs - | : | |
| MATT M. SCHROCK, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. 2011 TRC 04987R.

Recommendation: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Matt M. Schrock*, pro se, 836 A Main Street, Akron, OH 44310 (Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} The state of Ohio appeals from the decision of the Portage County Municipal Court, Ravenna Division, which granted appellee, Matt M. Schrock's, motion *in limine.* Mr. Schrock sought a determination that the BAC results from an Intoxilyzer 8000 test were not admissible at trial, and the trial court made such a determination based on the state's failure to present any expert testimony on the subject of the Intoxilyzer 8000's scientific reliability.

**{¶2}** We find that the trial court was not at liberty to demand presentation of evidence by the state of Ohio as to the scientific reliability of the Intoxilyzer 8000 prior to trial. The legislature has specifically recognized the admissibility of evidential breath testing instruments determined to be reliable by the Ohio Department of Health's Director of Health, and has delegated power to the Director of Health to make such determinations. Therefore, we reverse the decision of the Portage County Municipal Court and remand for further proceedings consistent with this opinion.

### Substantive Facts and Procedural History

**{¶3}** In April 2011, Matt Schrock was stopped for driving 53 m.p.h. in a 35 m.p.h. zone in Franklin Township. He was charged with one count of speeding in violation of R.C. 4511.21(C), and two counts of OVI in violation of R.C. 4511.19(A)(1)(a) and 4511.10(A)(1)(d); he pled not guilty to all three charges. On the date of his arrest, Mr. Schrock was administered a breath test using an Intoxilyzer 8000, which registered a BAC of .096.

**{¶4}** Mr. Schrock filed a motion to suppress, challenging the warrantless stop of his vehicle and the results of the BAC test. Despite being set for hearing a number of times, no hearing on the motion to suppress was ever held and the motion was not adjudicated. In February 2012, Mr. Schrock filed a motion *in limine*, seeking, pursuant to Evid.R. 702(C), an order requiring the state to present evidence at a *Daubert/Miller* hearing as to the "reliability and admissibility of breath alcohol results obtained by the Intoxilyzer 8000." The state responded in opposition, arguing that it was not required to present evidence to establish the general reliability of the Intoxilyzer 8000 prior to its introduction at trial of the machine's BAC test results.

{¶5} The trial court granted Mr. Schrock' motion *in limine*, relying entirely upon a recent decision from the same court, *State v. Johnson*, Portage M.C. No. R2011TRC4090, which also granted a motion *in limine* upon the state's refusal to present evidence on the matter of the Intoxilyzer 8000's general scientific reliability.[1] The state timely appealed, pursuant to Crim.R. 12(K) and R.C. 2945.67(A), and now brings the following assignment of error:

{¶6} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶7} We note that Mr. Schrock has not submitted a brief in this matter.

**Preliminary Matter**

{¶8} The state appeals from a grant of a motion *in limine*. Generally, a motion *in limine* "is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issues. In virtually all circumstances finality does not attach when the motion is granted." *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). However, "any motion which seeks to obtain a judgment suppressing evidence is a 'motion to suppress' for purposes of R.C. 2945.67 and Crim.R. 12(J) where that motion, if granted, effectively destroys the ability of the state to prosecute. The fact that the motion is not labeled 'motion to suppress' is not controlling."[2] *State v. Davidson*, 17 Ohio St.3d 132, 135 (1985). Because of the trial court's determination that the BAC results from the Intoxilyzer 8000 were not admissible at trial, the state's case has effectively been gutted and its ability to try the case destroyed. For that

---

1. *State v. Johnson* is currently on appeal before this court as case number 2012-P-0008, but has yet to be decided.

2. What was Crim.R. 12(J) at the time of this decision, is now Crim.R. 12(K).

3

reason, we find that a final appealable order exists and we may consider this appeal pursuant to R.C. 2945.67 and Crim.R. 12(K).

**Standard of Review**

**{¶9}** "'At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses.'" *State v. McGary*, 11th Dist. No. 2006-T-0127, 2007-Ohio-4766, ¶20, quoting *State v. Molek*, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, ¶24, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, "'[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence.'" *Id*, quoting *Molek* at ¶24, citing *State v. Retherford*, 93 Ohio App.3d 586, 592 (2d Dist.1994). *See also City of Ravenna v. Nethken*, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, ¶13. "'After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met.'" *Id.*, quoting *Molek at* ¶24*.*

**The Motion *in Limine* Was Granted in Error**

**{¶10}** In its sole assignment of error, the state argues that the trial court erred when it required the state to present expert testimony regarding the scientific reliability of the Intoxilyzer 8000, and further erred when it granted Mr. Schrock's motion *in limine* in the face of the state's refusal to go forward with a *Daubert/Miller* evidentiary hearing. We agree with the state that the trial court was not at liberty to demand the state go forward with an evidentiary hearing on the general scientific reliability of the Intoxilyzer 8000, and erred in determining the BAC test results were inadmissible in the absence of such evidence of reliability.

4

{¶11} We note that this court has already addressed this issue in *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, and *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583. We are generally constrained by this precedent, but further clarification is necessary regarding the "rebuttable presumption" discussed in those two decisions.

{¶12} In Ohio, four methods exist to establish the reliability and thus admissibility of scientific evidence: (1) judicial notice; (2) stipulation; (3) presentation of evidence, such as in a *Daubert/Miller* pre-trial hearing; and (4) legislative recognition. Giannelli, *Baldwin's Ohio Practice, Evidence* (3d Ed.), Section 702.8 (2010). It is this fourth method, the admissibility of evidence through legislative or statutory recognition, that is at issue in this case.

{¶13} Mr. Schrock was charged under R.C. 4511.19(A)(1)(a) and (d). "For purposes of sections 1547.11, 4511.19, and 4511.194 of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's whole blood, blood serum or plasma, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, controlled substance, metabolite of a controlled substance, or combination of them in the person's whole blood, blood serum or plasma, urine, breath, or other bodily substance. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses." R.C. 3701.143.

{¶14} Furthermore, R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence

5

on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation," and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."

{¶15} Reading these two code sections, it becomes evident that the legislature specifically delegated the power to determine the reliability of certain evidential breath testing instruments to the Director of Health. Questions of this delegation of authority to the executive branch, and the constitutionality of mandatory judicial notice of the reliability of this particular new breathalyzer machine under a separation of powers theory are not squarely before us today. Therefore, we limit our analysis to the narrow question that is before us and leave the resolution of those questions to another day and another case.

{¶16} It has been asserted that "'[u]nder [such] * * * statutes, the questions of relevancy, and to a large extent weight, of the evidence, *have thus been legislatively resolved.* The presumptions have been upheld by the courts * * * and the prescription for test procedures adopted by the state health agency has been taken as acceptance of the general reliability of such procedures in showing blood-alcohol content.'" *State v. Vega*, 12 Ohio St.3d 185, 188 (1984), quoting McCormick on Evidence (2 Ed. Cleary Ed. 1972) 511-513, Section 209. "It is evident from the statutory scheme upon the subject that it was the intention of the General Assembly to meet and address the

6

problem of drunken drivers upon the roads of Ohio and to do so by legislatively providing for the admission into evidence of alcohol test results, including breath tests, if conducted in accordance with procedures adopted by the Director of Health * * *. Such delegation is not novel and is utilized in such states as Alabama, Connecticut, Missouri and Florida." *State v. Brockway*, 2 Ohio App.3d 227, 231 (4th Dist.1981).

{¶17} The issue of whether breath test reliability can and must be determined by an evidentiary hearing before the trial judge, prior to the presentation of the evidence of the results to a jury, has been the subject of debate for some years. In the preeminent case on the matter, the Supreme Court of Ohio, in no uncertain terms, stated that "'[the judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath tests.'" *Vega* at 188-189, quoting *Brockway* at 231.

{¶18} "The presumption [of intoxication] created by the scientific test is thus to be considered by the jury and the court along with other evidence as to whether or not the accused was intoxicated." *Id.* at 189. Thus, "[t]he discretion of the court concerns not the general acceptability of the test but solely the criteria which are prescribed to govern the testing procedure. To hold otherwise would completely nullify the presumption established. Any issue of reliability may, of course, be raised as matter of weight in the trial of the charge." *State v. Warnecke*, 3d. Dist. No 12-81-3, 1981 Ohio App. LEXIS 11071, *4 (Nov. 30, 1981).

7

{¶19} This court has recognized that the result of the *Vega* decision is "that, because the legislature has delegated to the Director of the Ohio Department of Health, rather than the courts, the discretionary authority to determine which tests and procedures are reliable and thus admissible in an OVI prosecution, 'an accused may not make a general attack upon the reliability and validity of the breath testing instrument.'" *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, ¶87 (11th Dist.), quoting *Vega* at 190. It is well settled, however, "that while a defendant 'may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood-alcohol levels, he may challenge the accuracy of his specific test result.'" *City of Willoughby v. Eckersley*, 11th Dist. No. 99-L-061, 2000 Ohio App. LEXIS 2656, *11 (June 16, 2000), quoting *Columbus v. Day*, 24 Ohio App.3d 173, 174 (10th Dist.1985). *See also State v. Tanner*, 15 Ohio St.3d 1 (1984). Other Ohio appellate courts have consistently held the same. *See, e.g.*, *State v. Luke*, 10th Dist. No. 05AP-371, 2006-Ohio-2306; *State v. Columber*, 3d Dist. No. 9-06-05, 2006-Ohio-5490; *State v. Birkhold*, 5th Dist. No. 01CA104, 2002-Ohio-2464; *City of Dayton v. Futrell*, 2d Dist. No. CA 8515, 1984 Ohio App. LEXIS 11631 (Oct. 26, 1984).

{¶20} As noted earlier, this court recently provided its latest interpretation of *Vega* in *Rouse* and *Carter*. *Rouse* correctly recognizes that "[i]n *Vega*, the court clearly endorsed the legislative delegation of R.C. 3701.143," but then goes on to state that *Vega* establishes a "rebuttable presumption of reliability of R.C. 4511.19(D)(1)(b)." *Id.* at ¶21. This statement requires clarification of what presumption is actually rebuttable. The rebuttable presumption presented in *Vega* is that of the defendant's intoxication based on use of one of the Health Director approved machines in accordance with the Health Director's guidelines. The presumed reliability of the science behind the test

8

results from one of the approved machines is not a rebuttable presumption and may not be challenged through a pre-trial motion. Rather, the conclusion of intoxication based on test results from one of these machines is the rebuttable presumption, open to attack via the demonstration of a lack of reliability of the defendant's specific test results, i.e. the application of the statutorily admissible science utilized by the test machines to the defendant's particular sample and circumstances. *See Dayton*, *supra*.

{¶21} It is nothing new for this court to require that a trial court accord due deference to the director of health in matters of scientific expertise, where a statute establishes the director's authority. *See, e.g., State v. Ferrato*, 167 Ohio App.3d 136, 2006-Ohio-3219 (11th Dist.). Furthermore, affirmed by the Supreme Court of Ohio in *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, we upheld the constitutionality of an analogous legislative determination of admissibility related to field sobriety testing. See *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910. In affirming this court's determination, the Supreme Court stated that "the new legislation replaced the common-law standard of admissibility * * *." *Boczar* at ¶22.

{¶22} Therefore, the "legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines. It follows, then, that because the [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)] inquiry involves *only* determinations as to the reliability of the principles and methods upon which a particular scientific result is based, the legislative mandate recognized in *Vega* forestalls the need for any *Daubert* analysis in cases such as the present one." *Luke*, *supra*, at ¶24. Essentially, method number three of establishing the reliability of scientific evidence, presentation of evidence, is

9

unnecessary, because method number four, legislative recognition, has occurred. *See* ¶11, *supra.* The trial court has been relieved of the responsibility of determining the scientific reliability of breath test machines, and to proceed with a *Daubert/Miller* hearing would be an improper substitution of "the court's judgment as to the reliability of the testing procedures for that of the Director of Health." *Brockaway* at 231.

{¶23} We note, however, that such statutory recognition is "not without problems. For example, in *State v. Vega*, the Ohio Supreme Court held that, once the Intoxilyzer was legislatively recognized 'an accused may not make a general attack upon the reliability and validity of the breath testing instrument.' This holding is inconsistent with Rule 104(E), which provides that a ruling on the admissibility of evidence does not limit the 'right of a party to introduce before the jury evidence relevant to the weight or credibility.'" Giannelli*, supra.*

{¶24} Therefore, the statutory recognition of the Intoxilyzer 8000's admissibility in our view does not prevent a defendant from introducing evidence as to the general unreliability of this specific machine through the use of expert opinion testimony. Such testimony does not challenge the admissibility of the breath test results; rather it challenges the *weight and credibility* to be given to the results. A defendant who wishes to call such an expert at trial would merely be constrained by the requirements of Crim.R. 16(K) and Evid.R. 702. Determination of the admissibility of a defendant's expert in such circumstances would appropriately be resolved through a pre-trial *Daubert/Miller* hearing, where the *defendant* would carry the burden of establishing the evidentiary foundation for the admission of such expert's testimony.

**Application to Mr. Schrock's Case**

10

{¶25} Pursuant to Ohio Adm. Code 3701-53-02(A), the Director of Health has specifically approved the following evidential breath testing instruments: BAC DataMaster; BAC DataMaster K; BAC DataMaster cdm; Intoxilyzer model 5000 series 66, 68 and 68 EN; and Intoxilyzer model 8000 (OH-5). Mr. Schrock was tested using an Intoxilyzer 8000, one of the health director-approved instruments. Therefore, the trial court was obliged to recognize the general admissibility of Mr. Schrock's test results.

{¶26} Mr. Schrock initially filed a motion to suppress, challenging, among other things, the reliability of his specific test results based on noncompliance with the Ohio Department of Health's regulations. Although repeatedly set for hearing, the trial court never adjudicated the motion to suppress. Mr. Schrock subsequently filed a motion *in limine*, which contained a general challenge to the Intoxilyzer 8000 and sought a *Daubert* hearing on the issue of admissibility; the kind of challenge specifically prohibited under *Vega* and its progeny. In the wake of the state's refusal to put on *Daubert* evidence, the trial court granted the motion *in limine*, and determined the breath test results to be inadmissible at trial. This determination was in direct contravention of binding precedent: *Vega* out of the Supreme Court, and *Urso*, *Ferrato,* and *Eckersley* out of this court. It is, also, substantially out of sync with the prevailing position on this issue taken by the majority of Ohio appellate districts.

{¶27} The trial court's position, as the court in *Vega* put it, "simply fails to afford the legislative determination that intoxilyzer tests are proper detective devices the respect it deserves." *Vega* at 188. The trial court thus erred as a matter of law when it issued a judgment entry in direct contravention of both binding precedent and substantial persuasive authority. We, therefore, reverse the decision of the trial court and remand the case.

11

**{¶28}** Upon remand, the trial court may not require the state to present evidence of the Intoxilyzer 8000's general reliability. So long as Mr. Schrock's test was administered in substantial compliance with the Ohio Department of Health's directives, the results will be admissible at trial. Mr. Schrock may challenge the reliability and weight of his specific test results, however, either through a motion to suppress, or at trial.

**{¶29}** It is at this point that we must question the procedure upon remand outlined in *Rouse* and *Carter*, as we find these cases may have created an improper burden shifting requirement when the state is faced with a specific challenge to the test results. The *Rouse* court held that upon remand, "[defendant] is entitled, but has the burden of production, to specifically challenge the results of her breath test." (Emphasis added.) We agree with the concurring opinion in *Rouse*, that "the state bears the burden of showing compliance with regulations prescribed by the Ohio director of health." *Id.* at ¶25.

**{¶30}** In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, the Supreme Court of Ohio clearly laid out the manner in which burden shifting is to occur in a motion to suppress specific alcohol test results. "The defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress * * *. After a defendant challenges the validity of the test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations as prescribed by the Director of Health. Once the state has satisfied this burden and created a presumption of admissibility, the burden then shifts to the defendant to rebut that presumption by demonstration that he was prejudiced by anything less than strict compliance. *State v. Brown* (1996), 109 Ohio App.3d 629, 632, 672 N.E.2d 1050.

12

Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation." *Id.* at ¶24.

**{¶31}** Therefore, upon remand, Mr. Schrock may pursue a motion to suppress his test results so long as the challenge is specific in nature. Any suppression hearing will be conducted in accordance with the procedure that was clearly delineated in *Burnside* and has been, for decades, the common practice by courts within this district and all others in Ohio.

**{¶32}** The decision of the Portage County Municipal Court, Ravenna Division, is reversed and remanded for further proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J., concurs in judgment only with Concurring Opinion,

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, J., concurs in judgment only with Concurring Opinion.

**{¶33}** Based upon a strict reading of *State v. Vega*, 12 Ohio St.3d 185 (1984), the majority observes that a defendant cannot challenge the general scientific reliability of the Intoxilyzer 8000 via a pretrial motion to suppress. Instead, the majority maintains, breath test results are admissible pursuant to the legislative mandate recognized in *Vega.* The majority opines, however, that the admissibility of the results does not preclude a defendant from challenging the "general unreliability" of the machine at trial via expert testimony at trial. While I concur with the majority's disposition of this case, I do not agree with the majority's analysis in reaching its decision. I therefore concur in judgment only.

13

{¶34} In this case, the lower court sustained appellee's motion premised upon the state's failure to produce evidence of the Intoxilyzer 8000's general reliability. Under *Vega*, once suitable methods for breath analysis are established by the Director of Health, pursuant to the legislative directive, a statutory presumption of reliability then attaches to the approved testing devices. "Administrative rules enacted pursuant to a specific grant of legislative authority are to be given the force and effect of law." *Doyle v. Ohio Bureau of Motor Vehicles*, 51 Ohio St.3d 46 (1990), paragraph one of the syllabus. Further, once the Director of Health has promulgated regulations for breath testing instruments, they are to be given the force and effect of law. *State v. Yoder*, 66 Ohio St.3d 515, 519 (1993) (Wright, J., dissenting), citing *Doyle*, *supra*. Thus, Ohio Adm.Code 3701-53-02, which approved the Intoxilyzer 8000 as an evidential breath testing instrument, has the force and effect of law.

{¶35} Appellee filed a motion in limine that challenged the general reliability of the Intoxilyzer 8000. Although the motion lacked any clear specificity as to what legal or factual bases appellee was challenging, the court granted the motion because the state failed to produce any evidence demonstrating the test results were reliable.

{¶36} *Vega* held that a "*general* attack upon the reliability * * * of the breath testing instrument" is prohibited. (Emphasis added.) *Id.* at 190. This holding, however, allows for a *specific* challenge to the reliability of the Intoxilyzer 8000. *Id.* at 189. The majority appears to acknowledge this, but maintains such a challenge must occur at trial. I disagree with the majority's analysis of this point.

{¶37} Given the interplay of the statutory scheme and the relevant case law, I would hold that once the state establishes an approved breath testing device was used, a presumption of reliability attaches. This presumption, however, does not

14

automatically render the results admissible. Rather, a defendant, based upon specific challenges included in his motion to suppress, has the responsibility, *during a pretrial hearing on the motion*, to rebut the presumption by producing evidence of how, in his case, the breath test results were unreliable. In my view, therefore, a trial judge, after hearing specific evidence relating to the approved machine's purported unreliability, possesses the discretion to either admit or exclude the evidence. *See* R.C. 4511.19(D)(1)(b) (a trial judge, "in any criminal prosecution * * * *may admit evidence* on the concentration of alcohol * * * in the defendant's * * * breath[.]")

{¶38} Here, neither party disputes the Intoxilyzer 8000 was used. And since the Director of Health determined that the Intoxilyzer 8000 is reliable, it must be presumed the device is reliable. *See Yoder*, *supra*, at 518 ("[I]n promulgating this regulation, it must be presumed that the Director of Health acted upon adequate investigation * * *. We must defer to the department's authority and we may not substitute our judgment for that of the Director of Health.") Given these points, the state did not have the burden to produce evidence of the machine's reliability as a predicate for presenting appellee's breath test results. To the contrary, because the instrument is presumed to be a reliable breath testing instrument, appellee had the burden to produce evidence that the Intoxilyzer is not reliable. Thus, while I agree with the majority that the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability and in granting appellee's motion to suppress, I write separately to underscore my position that (1) the admissibility of Intoxilyzer results may be specifically challenged in a pretrial motion to suppress and (2) once the presumption of reliability is triggered, it is the defendant's, not the state's, burden to go forward.

15

{¶39} Therefore, while I agree with the disposition reached by the majority, I concur in judgment only.

_____

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

{¶40} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶41} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶42} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this

16

section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶43} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶44} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶45} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶46} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the

17

hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik,* 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶47}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶48}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶49}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as

18

holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶50} In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id*. at 186.

{¶51} Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St. 3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶52} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson,* Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer

19

8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶53} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶54} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion. Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶55} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of

the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶56} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶57} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.