[Cite as *State v. Warner*, 2013-Ohio-4116.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0121** |
| RAYMOND ALAN WARNER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 3970.

Judgment: Reversed and remanded.


*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dennis Day Lager,* Portage County Public Defender, and *Carolyn K. Mulligan,* Assistant Public Defender, 209 South Chestnut Street, #400, Ravenna, OH 44266 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1} The state of Ohio appeals the judgment of the Portage County Municipal Court, Ravenna Division, which granted appellee, Raymond Alan Warner's, motion to suppress the results of his Intoxilyzer 8000 test. This court recently held in *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, that the Intoxilyzer 8000 is presumed reliable, and that the defendant is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000. Based on this

court's precedent in *Carter*, we reverse the trial court's judgment, and remand this matter for further proceedings consistent with this opinion.

{¶2} On March 29, 2012, a citation was filed in the trial court, charging Warner with operating his vehicle under the influence of alcohol and driving with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d), respectively; driving with a suspended driver's license, in violation of R.C. 4510.21(A); and failure to yield at a posted red light, in violation of R.C. 4511.13(C). Warner pled not guilty.

{¶3} Subsequently, Warner filed a motion to suppress to exclude the results of his breath test, challenging the general reliability of the Intoxilyzer 8000. He also argued the machine was not working properly, the operator was not qualified, and the testing procedure was flawed.

{¶4} The state filed a brief in opposition, arguing it was not required to present evidence that the Intoxilyzer 8000 is reliable prior to the introduction of Warner's breath-test results because the legislature had delegated this determination to the Director of Health and the Supreme Court of Ohio upheld this delegation in *State v. Vega*, 12 Ohio St.3d 185 (1984).

{¶5} The parties submitted the issue to the court on briefs and no evidence was presented by either party.

{¶6} The trial court addressed only Warner's challenge to the general reliability of the Intoxilyzer 8000; the court did not address his specific challenges. The court granted Warner's motion to suppress, holding that the state was required to produce

2

evidence that the Intoxilyzer 8000 is reliable in order for his test results to be admissible at trial.

{¶7} The trial court granted the state's motion to stay execution of the judgment.

{¶8} The state appeals the trial court's judgment, asserting the following for its sole assignment of error:

{¶9} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶10} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Dijsheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶11} In *Carter*, this court followed *Vega* in acknowledging that the General Assembly in R.C. 3701.143 authorized the Director of Health to determine techniques for chemically analyzing the amount of alcohol contained in a person's breath. *Carter* at ¶16-17. Further, this court recognized that R.C. 4511.19(D)(1)(b) requires breath samples be analyzed for alcohol content in accord with methods approved by the Director of Health pursuant to R.C. 3701.143. *Carter* at ¶20. This court noted that the Director of Health, at Ohio Adm.Code 3701-53-02(A)(3), approved the Intoxilyzer 8000 as an evidential breath-testing instrument. *Carter* at ¶21.

{¶12} Further following *Vega*, this court in *Carter* stated that R.C. 4511.19 represented a legislative determination that breath-testing devices adopted by the Director of Health are generally reliable. *Carter* at ¶24, citing *Vega* at 188. This court

3

stated that "'in light of R.C. 4511.19, an accused may not make a general attack upon the reliability * * * of a breath testing instrument.'" *Carter* at ¶25, quoting *Vega* at 190.

{¶13} This court held that since the General Assembly has legislatively determined that the Intoxilyzer 8000 is reliable, it must be presumed this device is reliable. *Carter* at ¶37. In fact, this court in *State v. Miller,* 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, held that the Intoxilyzer 8000 "is presumed to be generally reliable." *Id.* at ¶32. Therefore, this court held that the state did not have the burden to produce evidence of the machine's reliability in order for the defendant's breath-test results to be admissible at trial. *Carter* at ¶39.

{¶14} This court in *Carter* held that, in light of *Vega* and the presumption that the Intoxilyzer 8000 is reliable, a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000. *Carter* at ¶43, citing *Vega*. In support of this holding, this court in *Carter* held that *Vega's* prohibition against a *general* attack on the reliability of the breath instrument "allows for a *specific* challenge to the reliability of the Intoxilyzer 8000." (Emphasis added.) *Carter* at ¶35.

{¶15} In *Miller*, *supra*, this court also held that a defendant can make specific challenges to the reliability of the Intoxilyzer 8000, as follows:

> {¶16} *In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. While * * * the machine is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress*, as opposed to general

4

assertions that the State failed to prove its reliability, which is prohibited under *Vega. See Vega* at 189. (Emphasis added.) *Miller* at ¶32.

{¶17} Further, this court in *Miller* held that a defendant seeking to suppress the results of his breath test can make "specific challenges to the Intoxilyzer's reliability," and that "[a] defendant may * * * challenge the reliability of the Intoxilyzer 8000 with specific arguments * * *." *Id.* at ¶33.

{¶18} In addition, this court in *Carter* held that, because the instrument is presumed reliable, the defendant has the burden of production to present evidence that the Intoxilyzer 8000 is not reliable. If the defendant satisfies his initial burden, the burden of proof then shifts to the state to produce evidence establishing the machine's reliability.

{¶19} As a practical matter, after both parties present the evidence in support of their respective positions, the trial court determines whether the defendant has met his initial burden of production. If the court determines that the defendant has not met his burden of production, the motion shall be denied. However, if the court finds that the defendant has satisfied his burden, the court shall then determine whether the state has satisfied its burden of proof. If it has, the motion shall be denied. However, if it has not, the motion shall be granted.

{¶20} The foregoing burden-shifting procedure has long been followed by federal and state courts in the analogous contexts of apparently lawful searches and confessions. With respect to searches following the issuance of a search warrant, a defendant has the initial burden to establish a prima facie case that the search was not

lawful. Once that burden is met, the burden shifts to the state to prove the search was lawful. *United States v. Whitten*, 848 F.2d 195, 1988 U.S. App. LEXIS 6485, *3 (6th Cir.); *United States v. Murrie*, 534 F.2d 695, 697-698 (6th Cir.1976); *United States v. Triumph Capital Group, Inc.,* 2003 U.S. Dist. LEXIS 24776, *7-*8 (D.Conn.). Further, "[t]here are shifting burdens in suppression hearings regarding confessions." *United States v. Burnette*, 535 F.Supp.2d 772, 782 (E.D.Tex.2007). After the defendant satisfies his initial burden to show his confession was the result of a custodial interrogation, the burden shifts to the government to prove the evidence was not illegally obtained, i.e., that the Miranda warnings were given; the defendant waived them; and the confession was voluntary. *Id.* It is worth noting that trial courts typically decide whether the parties met their respective burdens after all evidence has been presented. *See e.g. Triumph*, *supra*, at *8; *Murrie*, *supra*, at 696-698; *Burnette*, *supra*, at 779-780; *State v. Saffell*, 9th Dist. No. 2928, 1995 Ohio App. LEXIS 3060, *2-*4 (July 19, 1995); *United States v. Bonds*, 2006 U.S. Dist. LEXIS 3436, *3-*5 (S.D.Miss.).

**{¶21}** As noted above, Warner asserted certain challenges below to the administration of his particular test. However, because the trial court did not address these challenges in its judgment and Warner does not raise them on appeal, we cannot consider them.

**{¶22}** Pursuant to *Carter*, we hold the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability, in granting Warner's motion, and in excluding the results of his breath test.

6

{¶23} Therefore, on remand, the trial court is instructed to reinstate Warner's per-se charge. Further, Warner is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000.

{¶24} For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶25} I concur in the judgment of this court, that, pursuant to R.C. 4511.19(D)(1)(b) and R.C. 3701.143, as interpreted by *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), a defendant may not challenge the general reliability of the Intoxilyzer 8000 as a testing instrument approved by the Ohio director of health.

{¶26} I write separately, however, because I have reservations with this court's reading of the Ohio Supreme Court's decision in *Vega* as creating a rebuttable presumption as to the general reliability of approved testing instruments for the purpose of admissibility.

{¶27} In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument."

7

*Id.* at 190. The court explained that, by enacting R.C. 4511.19, the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. "[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 188-189, citing *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981).

{¶28} Under *Vega*, the admissibility and weight of the results of a breath testing instrument may be challenged on other grounds. When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). "There is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303, at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317, ¶ 27 (10th Dist.) ("while [supreme court precedent] permits evidentiary objections to the test results challenging issues such as competency,

8

admissibility, relevancy, authenticity, and credibility, it does not indicate that a challenge to the 'general reliability' is among the permissible challenges").

{¶29} The writing judge fails to distinguish among the types of challenges that may be raised against a breath-testing instrument. The admissibility of breath test results may be challenged based on the State's failure to analyze the sample in accordance with the approved methods and/or operator qualifications. For this type of challenge, the usual suppression procedures are followed. Thus, the movant bears the burden of "stat[ing] with particularity the grounds upon which it is made." Crim.R. 47. This burden is distinct from the burden to produce evidence, which this court places upon defendants when challenging the reliability of the machine, and which the State would otherwise bear in a pre-trial motion to suppress. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24 ("[a]fter a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health").

{¶30} Breath test results may also be challenged and excluded based on the testing instrument's general reliability. Trial courts are invested with the role of gatekeeper with respect to scientific evidence. "This gatekeeping function imposes an obligation upon a trial court to assess both the reliability of an expert's methodology and the relevance of any testimony offered before permitting the expert to testify." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 24, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998).

{¶31} The test results of the Intoxilyzer 8000, however, are not subject to this type of challenge. As noted above, the Ohio Supreme Court has held that the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Vega*, 12 Ohio St.3d at 188, 465 N.E.2d 1303.

{¶32} Likewise, this court has also recognized that the results of the Intoxilyzer 8000 may not be excluded based on a *Daubert*/reliability challenge. *See State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 28 ("appellee's argument that the Intoxilyzer 8000 is unreliable was an attack on the general reliability of a director-approved breath-testing instrument, which is prohibited by *Vega*," accordingly "we maintain a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer"); *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, ¶ 40 (the same).

{¶33} Finally, breath test results may be challenged at trial by impeachment and by attacks on their credibility/reliability. These challenges do not result in the suppression or exclusion of the test results, but undermine their evidentiary value. Both the Ohio Supreme Court and this court have recognized the permissibility of such challenges. *Vega* at 189; *Tanner*, 15 Ohio St.3d at 6, 472 N.E.2d 689; *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 31.

{¶34} The writing judge's position conflates these three types of challenges in a manner contrary to *Vega* and inconsistent with this court's precedents. The writing judge acknowledges that, by virtue of legislative determination, the Intoxilyzer 8000 "must be presumed * * * reliable." *Supra* at ¶ 13. The writing judge then states that a defendant may rebut this presumption, bearing "the burden of production to present

10

evidence that the Intoxilyzer 8000 is not reliable," with burden then shifting to the State "to produce evidence establishing the machine's reliability." *Supra* at ¶ 18.

**{¶35}** By so holding, the writing judge provides for *Daubert*-style challenges to the Intoxilyzer 8000's reliability, despite the prohibition of such challenges in *Vega*, *Carter*, and *Rouse*. The writing judge provides for such challenges in the context of a motion to suppress, whereas the Ohio Supreme Court and this court have previously held that such challenges to reliability are properly raised at trial. Lastly, the writing judge's position disrupts the ordinary course of proceedings at a suppression hearing, by placing the burden of production on the defendant. Such a procedure as the writing judge prescribes would result in an unnecessarily confused hearing with the State bearing the burden of production on some challenges, and the defendant bearing the burden on others, all depending on how one characterizes the particular challenge to reliability.

**{¶36}** This situation is avoided by a more faithful application of *Vega*, whereby the State must address specific issues regarding the Intoxilyzer 8000's reliability by demonstrating that a bodily substance was "analyzed in accordance with methods approved by the director of health," while the defendant, at trial, may challenge the accuracy of his or her specific test results and the qualifications of the person administering the test and otherwise strive to discredit the weight to be given the specific test results. This has been my consistent position since the *Miller* decision. *See Miller*, 2012-Ohio-5585, at ¶ 31-32.

**{¶37}** Therefore, in regard to the preceding statements, I concur in judgment only.

11

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶38} I respectfully dissent.

{¶39} As the writing judge notes, the state relies on *Vega*, 12 Ohio St.3d 185. I do not believe that *Vega* stands for the sweeping proposition advanced by the state – i.e., that the results of all tests from breath analysis machines approved by the Director of Health for use in OVI cases must, automatically, be accepted into evidence, so long as the operator is competent and the machine functional.

{¶40} In *Vega*, the court held: "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id*. at 186. The *Vega* court premised its decision on several considerations.

{¶41} First, the court cited to its prior holding in *Westerville v. Cunningham*, 15 Ohio St.2d 121, 123 (1968), regarding use of breath analysis machines in OVI cases, for the proposition that: "'such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators.'" *Vega* at 186.

{¶42} Second, the court noted that the General Assembly confided discretion to determine proper methods of analyzing breath alcohol to the Director of Health, and that the director had designated the machine in question as appropriate. *Vega*, 12 Ohio St.3d at 186-187.

12

**{¶43}** Third, the court noted that under the version of R.C. 4511.19 then current, the results of a breath analysis exceeding the statutory level merely created a rebuttable presumption that the defendant was intoxicated, which did not prevent the defendant showing, through other evidence, that he or she was not, in fact, under the influence of alcohol. *Vega*, 12 Ohio St.3d at 188-189.

**{¶44}** Based on this last point, it would appear that *Vega* is no longer good law. The Parma Municipal Court recently so found in *Parma v. Malinowski*, Parma M.C. No. 12TRC 03580 (April 22, 2013) (Spanagel, J.). As that court states:

**{¶45}** "The majority in *Vega* themselves set forth the (sic) in their own logic why *Vega* is no longer good law, when they stated:

**{¶46}** "'Not only does appellee's position fail to give recognition to the legislative determination, *it also misperceives the presumption and the effect of that presumption created by R.C. 4511.19.* The presumption created by R.C. 4511.19 is that the accused was under the influence of alcohol. 'The effect of the presumption is to eliminate the necessity of proof by the prosecution of the effect of alcohol on the individual when the level is within the range established by the presumption. *The statute does not create an absolute presumption, but only a rebuttable one* (* * *).

**{¶47}** "*This presumption does not, contrary to appellee's arguments, change the presumption of innocence to one of guilt. It merely raises the rebuttable presumption that one was under the influence of alcohol.* Under the statute, *the accused may introduce any other competent evidence bearing upon the question* of whether he was under the influence of intoxicating liquor. (* * *) *There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of*

13

*the operator.* See, e.g., *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, * * *. *Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed.* Since the *presumption is rebuttable* and the defendant may go forward with evidence, the '(* * *) (d)efendant cannot be heard to complain that the provisions of R.C. 4511.19 eliminate his presumption of innocence or hamper the presentation of his defense.' *State v. Myers* [(1971), 26 Ohio St.2d [190,] 201, * * *. The presumption created by the scientific test is thus to be considered by the jury and the court along with the other evidence as to whether or not the accused was intoxicated. Whether the presumption was overcome by the evidence presented is a question of fact for the jury.' * * *

{¶48} "Examination of the majority decision itself clearly shows that they believed that the *rebuttable presumption* was able to be addressed by presenting other evidence, including limited attack on the machine result as another item of evidence. Today the test result is not a rebuttable presumption but a *conclusive presumption.* Conclusive presumptions have been previously found to be unconstitutional." (Citing *Sandstrom v. Montana*, 442 U.S. 510 (1979)). (Emphasis sic.) (Parallel citations omitted.) *Malinowski* at 8-9.

{¶49} This reasoning is persuasive. Conclusive presumptions being unconstitutional, *Vega* can no longer provide authority that attacks on the reliability of breath analysis machines cannot be made, since the law presently gives the results of such tests conclusive effect.

14

**{¶50}** However, an analysis of the applicable statutes, even within the context of *Vega*, does not lead to the conclusion that a trial court may not demand proof of the Intoxilyzer 8000's reliability.

**{¶51}** R.C. 4511.19(D)(1)(b) states in part:

**{¶52}** "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation * * * [and] [t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

**{¶53}** The foregoing statute uses the word "may." "'The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary.'" *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001 Ohio App. LEXIS 5842, *16 (Dec. 21, 2001), quoting *Dorrian v. Scioto Conserv. Dist.*, 27 Ohio St.2d 102, 107 (1971). Thus, R.C. 4511.19(D)(1)(b) does not mandate admissibility of the results of the breath test. Rather, the statute vests the trial court with discretion in making a determination with respect to admissibility, notwithstanding

approval from the director of health. As my colleague, Judge Wright, has recently stated in a series of penetrating dissents:

**{¶54}** "R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results." *State v. Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶38.[1]

**{¶55}** Again, the statutory scheme does not establish the proposition advanced by the state: i.e., results of any breath analysis machine *must* be accepted at trial. Rather, the statutes provide that the Director of Health has sole authority to approve machines – but that the trial courts of Ohio have discretion to accept the results generated by the machines so approved. Further, *Vega* prohibits blanket attacks on the reliability of breath analysis machines generally, and premises this upon the use of "'proper equipment.'" *Vega*, 12 Ohio St.3d at 186. The question raised in this case is the reliability of the Intoxilyzer 8000 specifically. A breath analysis machine could only be "proper equipment" if it *is* reliable.

---

1. *See also Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440; *State v. Schrock*, 11th Dist. No. 2012-P-0022, 2013-Ohio-441; *State v. Harmon*, 11th Dist. No. 2012-P-0067, 2013-Ohio-442; *State v. Funk*, 11th Dist. No. 2012-P-0071, 2013-Ohio-444; *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445; *State v. Webb*, 11th Dist. No. 2012-P-0052, 2013-Ohio-541; *State v. Neice*, 11th Dist. No. 2012-P-0064, 2013-Ohio-542; *State v. Butler*, 11th Dist. No. 2012-P-0066, 2013-Ohio-543; *State v. Lucas*, 11th Dist. No. 2012-P-0070, 2013-Ohio-544; *State v. Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545; *State v. Kuntz*, 11th Dist. No. 2012-P-0082, 2013-Ohio-546; *State v. McCune*, 11th Dist. No. 2012-P-0089, 2013-Ohio-547; *State v. Zoeckler*, 11th Dist. No. 2012-P-0092, 2013-Ohio-548; *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549; *State v. Hinton*, 11th Dist. No. 2012-P-0095, 2013-Ohio-550; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551.

**{¶56}** As Judge Wright further noted in *Collazo*:

**{¶57}** "In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v. Revolution Software Inc.,* 181 Ohio App.3d 519, 2009 Ohio 1191, ¶45, * * * (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *8 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶58}** "Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶59}** "'Substantive due process, (although an) ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty." (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available.' *State v. Small*, 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11, * * * (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d. 1317, 1328 (6th Cir. 1989).

{¶60} "However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; '(substantive) * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence.' *Barefoot v. Estelle*, 463 U.S. 880, 931, fn. 10, * * *." (Parallel citations omitted.) *Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶41-44.

{¶61} As the Court of Appeals, Tenth Appellate District has observed:

{¶62} "Substantive due process prohibits the government from infringing upon fundamental liberty interests in any manner, regardless of the procedure provided, unless the infringement survives strict scrutiny; i.e., the government's infringement must be 'narrowly tailored to serve a compelling state interest.' *Reno v. Flores* (1993), 507 U.S. 292, 302, * * *." *In re M.D.*, 10th Dist. No. 07AP-954, 2008-Ohio-4259, ¶9.

{¶63} Case law indicates serious problems regarding the reliability of the Intoxilyzer 8000, which make it incumbent on trial courts to assure the reliability of its results, before allowing those results into evidence. In one case, plaintiff brought a federal action for violation of his Fourth Amendment rights, following his arrest for driving under the influence. *Briggs v. Holsapple*, D.Oregon Civil Case No. 08-6037-KI, 2009 U.S. Dist. LEXIS 11295, *1 (Feb. 11, 2009). Despite considerable indications on the field sobriety tests that the plaintiff was inebriated, his breath test on an Intoxilyzer 8000 resulted in a 0.000% BAC. *Id.* at *6. The state of Oregon brought its own expert in to testify *against* the reliability of the machine. *Id.* at *7. As stated by the district court:

{¶64} "Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000

18

underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000%; (c) based on the alcohol consumption described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, * * *." *Id.* at *7-8.

**{¶65}** The state of Ohio does not seem to have access to the "source code" for the Intoxilyzer 8000. *State v. Gerome, et al.*, Athens County M.C. Nos. 11TRC01909, 11TRC00826, 11TRC01734, and 11TRC02434, at 15 (June 29, 2011) (Grim, J.). As the *Gerome* court found, "In the ODH certification of this instrument, access to the source code was apparently not deemed necessary." *Id.*

**{¶66}** "The source code is the human readable format of the software that controls the operation of the Intoxilyzer 8000. In other words, the source code tells the Intoxilyzer 8000 how to calculate the numerical result, such as 0.08. If the source code contains a mistake, then the result generated will be defective." *Montana v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, ¶4 (Mont. 2011).

**{¶67}** Testimony has been elicited that such widely used devices as smart phones can interfere with the Intoxilyzer 8000 at frequencies it cannot detect. *Gerome* at 20-21.

**{¶68}** One of the liberty interests constitutionally protected by substantive due process is "freedom from bodily restraint and punishment." *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶14. Conviction under the OVI laws can result in deprivation of this liberty interest. Consequently, substantive due process demands that such convictions be premised on proceedings and procedures which are constitutionally proper. The state has a compelling interest in preventing driving while impaired – but

19

any procedure adopted under the OVI laws must be narrowly tailored to serve that interest. Presently, use of the Intoxilyzer 8000 does not meet this standard. I appreciate the writing judge's holding that a defendant is entitled to make specific challenges to the general reliability of the Intoxlyzer 8000 – but it appears that the state itself is unaware of exactly *how* the machine functions, and generates its results. A criminal defendant is deprived of substantive due process when convicted using a procedure which is not merely unknown, but unknowable. Further, a criminal defendant's substantive due process rights cannot be overridden by a legislative enactment, and there is no need to interpret Ohio's laws regarding approval of breath analysis machines in a way that does. Similarly, the decision in *Vega*, premised on the use of "proper equipment," necessarily recognizes the duty of our trial courts to protect defendants' substantive due process rights by requiring them to insure that the equipment is proper. *Vega*, 12 Ohio St.3d at 186.

**{¶69}** For all the reasons foregoing, I would affirm the judgment of the trial court.