[Cite as *State v. Canino*, 2013-Ohio-551.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0102** |
| MAXWELL G. CANINO, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 1176.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dennis Day Lager*, Portage County Public Defender, *Mark A. Carfolo*, Assistant Public Defender, and *Carolyn K. Mulligan*, Assistant Public Defender, 209 South Chestnut Street, #400, Ravenna, OH 44266 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting defendant-appellee, Maxwell G. Canino's, Motion to Suppress. The issue to be decided in this case is whether a trial court, in the performance of its role as gatekeeper, may require the State to demonstrate the general scientific reliability of a breath testing instrument where the Ohio director of health has approved such instrument for determining the concentration

of alcohol in a person's breath.  For the following reasons, we reverse and remand the decision of the court below.

{¶2}   On January 28, 2012, Canino was issued a traffic ticket, charging him with Operating a Vehicle While Under the Influence (OVI), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(d); and Operating a Vehicle without Proper Headlights, a minor misdemeanor, in violation of R.C. 4513.04.

{¶3}   On March 13, 2012, Canino filed a Motion to Suppress, challenging, inter alia, the results of a breath test taken by Canino at the time of the citation.  He also asserted that the "testing instrument was not in proper working order," that the instrument operator "lacked the necessary qualifications," and a few additional alleged problems with the breath test.  In a supplement to the Motion to Suppress, filed on July 5, 2012, Canino also argued that the "Blood Alcohol Content test result from the Intoxilyzer 8000 is inadmissible and scientifically unreliable pursuant to State vs. Johnson (2012) in Portage County Municipal Court case 2011 TRC 04090."

{¶4}   The State filed a response to the Motion to Suppress and a "Brief Regarding Intoxilyzer 8000 Hearing" on July 13, 2012.  In that Brief, the State argued that it need not present evidence to establish the general reliability of the Intoxilyzer 8000, citing *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984).

{¶5}   A hearing on the Motion to Suppress was held on August 22, 2012.  At that hearing, the court noted that the case was an Intoxilyzer 8000 case.  The State asked that the court review the State's Brief and take it under advisement.  Canino argued that he was entitled to a hearing as to the reliability of the Intoxilyzer.  The court

confirmed with the State that no evidence as to the reliability of the instrument would be presented and the court noted that it would take the matter in advisement and issue an order "in conformity with" its holding in *Johnson*.

{¶6} In an August 23, 2012 Journal Entry, the trial court granted Canino's Motion to Suppress with respect to the results of the Intoxilyzer 8000. The court noted that it "limits its review of Defendant's Motion to Suppress solely to the admissibility of a BAC test from the Intoxilyzer 8000." It found that the issue in the present matter was "identical" to the one in *State v. Johnson*. In *Johnson*, the trial court held that the State was required to present evidence at a hearing for the trial court to determine the general scientific reliability and admissibility of the breath test results of the Intoxilyzer 8000. In the present matter, the court held that "the rationale and findings in *Johnson* are likewise applicable to this case." It held that the "breath test results from the Intoxilyzer 8000 are not admissible at the trial of Defendant" and that "[t]he remaining charges alleging a violation of ORC 4511.19(A)(1)(a) and 4513.04 shall be set for trial on the Court's docket."

{¶7} On August 27, 2012, the State filed a Motion to Stay the Execution of Judgment, which was granted by the court on August 28, 2012.

{¶8} The State timely appeals and raises the following assignment of error:

{¶9} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶10} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132

3

Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶11} We must first address Canino's argument that the lower court's August 23, 2012 Journal Entry is not a final order. Canino's argument is based on the distinction between a motion to suppress and a motion in limine, and he argues that since the motion ruled upon "was in essence a Motion in Limine," it is not a final appealable order. Canino argues that the judgment was "limited to an initial evidentiary ruling regarding the admissibility of the results of the Intoxilyzer 8000 under the Ohio Rules of Evidence" and does not "determine the ultimate admissibility of the evidence."

{¶12} "The purpose and effect of a motion to suppress and a motion *in limine* are distinct." *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995). A "motion to suppress" is a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation" of a constitutional right. *Id.*, citing Black's Law Dictionary (6 Ed.1990) 1014. "[T]he ruling of the court at the suppression hearing prevails at trial and is, therefore, automatically appealable by the state." *Id.*, citing R.C. 2945.67(A) and [former] Crim.R. 12(J).

{¶13} In contrast, a "motion *in limine*" is a motion "which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements * * * to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial." (Citation omitted.) *State v. Grubb*, 28 Ohio St. 3d 199, 200, 503 N.E.2d 142 (1986). In ruling on a motion in limine, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does

4

not attach when the motion is granted." (Citation omitted.) *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

{¶14} The Ohio Supreme Court has held that "[a]ny motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such a motion is a final order and may be appealed pursuant to R.C. 2945.67 and Crim. R. 12(J) [now (K)]." *State v. Davidson*, 17 Ohio St.3d 132, 477 N.E.2d 1141 (1985), syllabus. Accordingly, "[a] pretrial challenge to a breathalyzer test, if granted, destroys the state's case under [former] R.C. 4511.19(A)(3) [prohibited breath alcohol concentration], and the state is permitted to appeal pursuant to R.C. 2945.67 and Crim. R. 12[(K)(2)]." *Defiance* at 4.

{¶15} As this court has recently held in very similar circumstances, a determination that "the Defendant's breath test shall not be admitted during the trial" was not a "tentative or precautionary ruling." *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 19. This court further held that "[a]ny doubt as to the finality of this ruling is removed by the court's dismissal of the charge of operating a vehicle with a prohibited breath alcohol concentration," which appears to have also occurred in the present matter, given that the court noted that the "remaining charges" under R.C. 4511.19(A)(1)(a) and R.C. 4513.04 would be set for trial. *Id.*

{¶16} For the foregoing reasons, the municipal court's August 23, 2012 Journal Entry is a final order, properly appealed by the State pursuant to R.C. 2945.67(A) and Crim.R. 12(K)(2), which allow a prosecuting attorney to appeal a decision granting a

5

motion to suppress evidence, provided that the prosecuting attorney certifies that the ruling "has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." Crim.R. 12(K)(2).

{¶17} In its sole assignment of error, the State argues that, pursuant to the provisions of R.C. 3701.143 and Ohio Adm.Code 3701-53-02(A), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to determine the amount of alcohol in the breath. It further argues that pursuant to *Vega*, a defendant may not attack the general reliability of a breath testing instrument and that the State is not required to present evidence to support a determination that the test is generally reliable.

{¶18} Canino rejects the State's argument for several reasons, including the contention that the use of the word "may" in the phrase "the court may admit evidence on the concentration of alcohol" in the OVI statute recognizes the trial court's discretion to admit and exclude evidence and that a threshold showing of reliability by the State is required.

{¶19} The Ohio General Assembly has charged the Ohio director of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath[.]" R.C. 3701.143. The Intoxilyzer 8000 has been approved as an "evidential breath testing instrument" by the director of health. Ohio Adm.Code 3701-53-02(A)(3).

6

{¶20} This court has recently addressed the exact issue raised by the State regarding the general reliability of the Intoxilyzer 8000 and determined that, pursuant to *Vega*, a defendant may not make "a general attack upon the reliability and validity of the breath testing instrument," although breath test results are subject to challenge on a variety of grounds, including specific attacks on the reliability of the test and attacks on the performance of the test in a specific defendant's case. *Miller*, 2012-Ohio-5585, at ¶ 30-32; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, ¶ 25 and 35; *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 24 and 32.

{¶21} As was discussed in the foregoing cases, the lead Ohio Supreme Court case on this issue is *Vega*, in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." 12 Ohio St.3d at 186, 465 N.E.2d 1303. In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument," since the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188, 190.

{¶22} While no general attack on reliability may be made, when duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The Ohio Supreme Court has affirmed that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing

7

procedures at trial going to weight rather than admissibility." *Vega* at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *French*, 72 Ohio St.3d at 451-452, 650 N.E.2d 887.

{¶23} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189.

{¶24} Despite these rulings, Canino contends that trial courts nevertheless retain the discretion to hear argument on the general or scientific reliability of a breath testing instrument, relying on a statement in *French* allowing certain evidentiary objections to chemical test results to be raised. However, this argument has already been rejected by this court in *Miller*, since *French* does not create an exception to the *Vega* rule prohibiting challenges to the general scientific reliability of breath testing instruments. *Miller*, 2012-Ohio-5585, at ¶ 28; *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, 961 N.E.2d 689, ¶ 90 (11th Dist.).

{¶25} Canino also asserts that the trial court could not take judicial notice of the reliability of the Intoxilyzer 8000, since no court in the trial court's jurisdiction has approved of expert testimony to establish the reliability of the instrument, and that *Vega* cannot establish the reliability of the instrument through judicial notice.

8

**{¶26}** We disagree. As explained in the foregoing analysis, *Vega* requires the lower court to accept the general reliability of the Intoxilyzer, pursuant to the determination of the Ohio director of health. This eliminates the necessity of the State presenting expert testimony or other evidence as to the general reliability of the Intoxilyzer 8000. *See Dayton v. Futrell,* 2nd Dist. No. CA 8615, 1984 Ohio App. LEXIS 11631, *4 (Oct. 26, 1984) (The "judiciary must take notice that [intoxilyzer breath] tests, properly conducted, are reliable irrespective of disagreements among experts and that the results of such tests are admissible. Accordingly, judicial notice of this factor dispenses with the necessity for expert testimony by the state in chief for the efficiency of the intoxilyzer machine."); *Miller* at ¶ 29, citing *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶ 36 (noting that a *Daubert* challenge or presentation of expert testimony is "forestalled by the 'legislative mandate recognized in *Vega*'") (citation omitted).

**{¶27}** Canino finally argues that the delegation of authority to the director of health to determine the validity of testing methods and devices violates the separation of powers doctrine and infringes upon the trial court's role as gatekeeper and its regulation of the admission of expert testimony under Evidence Rule 702.

**{¶28}** "The Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." (Citation omitted.) *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must

9

demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38.

{¶29} The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence. Canino refers to Evidence Rule 702; but nothing in this rule establishes the trial court as the sole "gatekeeper" with respect to the general reliability of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions."

{¶30} The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as a "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶31} In a similar situation, the Ohio Supreme Court considered the General Assembly's authority to statutorily provide for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance standard, based on common law, adopted by Ohio courts. The Supreme Court found no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the

10

General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.* at ¶ 23.

**{¶32}** Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the ultimate admissibility of evidence, but rather delegate the preliminary determination regarding the general scientific reliability of testing devices to the director of health. As noted above, the defendant may always challenge the accuracy of his or her specific test results and the qualifications of the person administering the test, and otherwise strive to discredit the weight to be given the specific test results, as well as make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons instead of general assertions of the State's failure to prove its reliability. This is consistent with this court's recent holding in *Rouse.* 2012-Ohio-5584, at ¶ 21 ("a defendant is entitled to produce evidence to assail the particular results of the subject test, thereby preserving the trial court's role as gatekeeper").

**{¶33}** We note that, in the present case, Canino challenged the breath test results of the Intoxilyzer 8000 on several grounds, including that the breath test was not administered within the time limit, that the testing instrument was not working properly, that the instrument operator lacked the necessary qualifications, and that other regulations were not followed. However, the municipal court appears to have granted Canino's Motion solely on the grounds stated in *Johnson*, that the State failed to

11

produce evidence of the Intoxilyzer 8000's general scientific reliability. Accordingly, on remand, it will be necessary for the court to hold another hearing to address the other issues raised in Canino's Motion to Suppress. *Miller*, 2012-Ohio-5585, at ¶ 34.

{¶34} The sole assignment of error is with merit.

{¶35} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Canino's Motion to Suppress and dismissing the charge of violating R.C. 4511.19(A)(1)(d) is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


TIMOTHY P. CANNON, P.J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.


_____


THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶36} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶37} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human

12

fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶38} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."  (Emphasis added.)

{¶39} The statute does not use the word "shall," which would mandate admission regardless of the circumstances.  Rather, the statute uses the word "may."  For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶40} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b).  As reliability

13

presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶41}** Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶42}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶43}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶44}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶45}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶46}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general*." (Emphasis added.) *Id.* at 186.

**{¶47}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a

15

"reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶48} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶49} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

16

{¶50} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion. Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶51} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶52} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for

17

appellate review).  By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶53}  This appeal is centered around a discretionary decision made by the trial court.  As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.