[Cite as *State v. Yanchar*, 2013-Ohio-1296.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0097** |
| MATTHEW J. YANCHAR, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 03361.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Jason P. Yanchar*, 125 Claridon Road, Chardon, OH 44024 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting defendant-appellee, Matthew J. Yanchar's, Motion to Suppress/Motion in Limine. The issue to be decided in this case is whether a trial court, in the performance of its role as gatekeeper, may require the State to demonstrate the general scientific reliability of a breath testing instrument where the Ohio director of health has approved such instrument for

determining the concentration of alcohol in a person's breath. For the following reasons, we reverse and remand the decision of the court below.

{¶2} On March 8, 2012, Yanchar was issued a traffic ticket, charging him with Operating a Vehicle While Under the Influence (OVI), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a), and OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(d).

{¶3} On May 25, 2012, Yanchar filed a Motion to Suppress/Motion in Limine. In this Motion, he challenged the results of a breath test taken at the time of the citation, arguing that the Intoxilyzer 8000 is not a reliable instrument. He asserted various specific challenges related to the test including, inter alia, that the test was not conducted in accordance with the pertinent administrative code provisions, that the machine was not properly calibrated, and that the machine operator was not properly qualified. Yanchar also raised challenges related to field sobriety testing and statements he made to the police.

{¶4} On August 17, 2012, a hearing was held on the Motion to Suppress/Motion in Limine. At the hearing, the State noted that the issue of the intoxilyzer's general reliability was being questioned and that it would present no witnesses as to this issue, as it believed there was no requirement to prove the intoxilyzer's reliability. Yanchar argued that the court should follow the precedent of its prior cases and suppress the breath test result, based on the State's failure to prove the intoxilyzer's general reliability. Yanchar also requested to preserve his right to challenge other issues raised in the Motion to Suppress following appeal.

{¶5} In an August 17, 2012 Journal Entry, the trial court granted Yanchar's Motion to Suppress/Motion in Limine with respect to the results of the Intoxilyzer 8000. The court noted that it had considered the parties' arguments regarding the scientific reliability of the Intoxilyzer 8000 and *State v. Johnson*, Portage County Municipal Court Case No. 2011 TRC 04090. In *Johnson*, the trial court held that the State was required to present evidence at a hearing for the trial court to determine the general scientific reliability and admissibility of the breath test results of the Intoxilyzer 8000. In the present matter, the court ordered that "the Defendant's breath test shall not be admitted during the trial in this matter" and dismissed the charge under R.C. 4511.19(A)(1)(d). The court also stayed further proceedings in the matter pending the outcome of the appeal.

{¶6} The State timely appeals and raises the following assignment of error:

{¶7} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶8} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶9} We must first address Yanchar's argument that the lower court's August 17, 2012 Journal Entry is not a final order. Yanchar argues that the judgment was

limited to a ruling regarding the admissibility of the results of the Intoxilyzer 8000 under the Ohio Rules of Evidence and the court could change its ruling at any time.

{¶10} This argument has been previously rejected by this court on multiple occasions. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 18, citing *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991) ("[a] pretrial challenge to a breathalyzer test, if granted, destroys the state's case under [former] R.C. 4511.19(A)(3) [prohibited breath alcohol concentration], and the state is permitted to appeal pursuant to R.C. 2945.67 and Crim. R. 12[(K)(2)]"); *State v. Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545, ¶ 13-14; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551, ¶ 14-16. This court held that a determination that "the Defendant's breath test shall not be admitted during the trial" was not a "tentative or precautionary ruling." *Miller* at ¶ 19. This court further held that "[a]ny doubt as to the finality of this ruling is removed by the court's dismissal of the charge of operating a vehicle with a prohibited breath alcohol concentration," which also occurred in the present matter. *Id.* Accordingly, the municipal court's August 17, 2012 Journal Entry is a final order.

{¶11} In its sole assignment of error, the State argues that, pursuant to the provisions of R.C. 3701.143 and Ohio Adm.Code 3701-53-02(A), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to determine the amount of alcohol in the breath. It further argues that pursuant to *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), a defendant may not attack the general reliability of a breath testing instrument and the State is not

4

required to present evidence to support a determination that the test is generally reliable.

{¶12} Yanchar rejects the State's argument for several reasons, including the contention that the use of the word "may" in the phrase "the court may admit evidence on the concentration of alcohol" in the OVI statute recognizes the trial court's discretion to admit and exclude evidence and that a threshold showing of reliability by the State is required. Further, a similar argument was raised in an amicus brief filed by the Ohio Association of Criminal Defense Lawyers (OACDL), in support of Yanchar.

{¶13} The Ohio General Assembly has charged the Ohio director of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath[.]" R.C. 3701.143. The Intoxilyzer 8000 has been approved as an "evidential breath testing instrument" by the director of health. Ohio Adm.Code 3701-53-02(A)(3).

{¶14} This court has recently addressed the exact issue raised by the State regarding the general reliability of the Intoxilyzer 8000 and determined that, pursuant to *Vega*, a defendant may not make "a general attack upon the reliability and validity of the breath testing instrument," although breath test results are subject to challenge on a variety of grounds, including specific attacks on the reliability of the test and attacks on the performance of the test in a specific defendant's case. *Miller*, 2012-Ohio-5585, at ¶ 30-32; *Pizzino*, 2013-Ohio-545, at ¶ 18; *Canino*, 2013-Ohio-551, at ¶ 20. This position has been consistently maintained by a majority of this court in the recent cases on this matter.

5

**{¶15}** As was discussed in the foregoing cases, since "the General Assembly has legislatively provided for the admission of [breath] tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health," the question of the reliability and relevancy of breath tests has been resolved. *Vega,* 12 Ohio St.3d at 186, 465 N.E.2d 1303. Therefore, "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id.* at 190.

**{¶16}** While no general attack on reliability may be made, when duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The Ohio Supreme Court has affirmed that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega* at 189; *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984) ("[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure").

**{¶17}** In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189.

**{¶18}** While Yanchar argues that *Vega* is distinguishable and no longer applies due to changes in the law over the past few decades, this court has fully considered all

6

applicable law and determined that the foregoing holding in *Vega* has been reaffirmed by the Ohio Supreme Court, has been applied by various appellate courts, and that *Vega* is applicable to the present matter. *See Miller*, 2012-Ohio-5585, at ¶ 27; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, ¶ 27-30.

**{¶19}** Both Yanchar and the OACDL assert that the delegation of authority to the director of health to determine the validity of testing methods and devices violates the separation of powers doctrine and infringes upon the trial court's role as gatekeeper and its regulation of the admission of expert testimony under Evidence Rule 702.

**{¶20}** This argument has been fully considered and rejected by this court. *Pizzino*, 2013-Ohio-545, at ¶ 27 ("[t]he delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence"); *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549, ¶ 22, citing *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22 (noting that, in a similar situation, the Ohio Supreme Court has considered the General Assembly's authority to statutorily provide for the admissibility of the results of field sobriety tests based on substantial compliance, and found there to be no encroachment "on the exclusive rule-making authority of the judiciary").

**{¶21}** Further, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, the Ohio Supreme Court expressly characterized R.C. 4511.19(D)(1) as a "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to

7

show either impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶22} Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the ultimate admissibility of evidence, but rather delegate the preliminary determination regarding the general scientific reliability of testing devices to the director of health. As noted above, the defendant may always challenge the accuracy of his or her specific test results and otherwise strive to discredit the weight to be given the specific test results, as well as make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. This is consistent with this court's recent holdings. *See State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 21 ("a defendant is entitled to produce evidence to assail the particular results of the subject test, thereby preserving the trial court's role as gatekeeper").

{¶23} The OACDL argues in its amicus brief that the courts must counterbalance the Ohio director of health's "unfettered discretion," and that *Vega* should be interpreted in light of various changes in the law over the past few decades. However, the issue before this court is not whether the Ohio Supreme Court should reconsider or revisit its decision in *Vega*, or whether the Legislature should rewrite the law to remove the director of health's authority to determine the reliability of the intoxilyzer. Instead, this court must determine the proper application of the case law and statutes as they presently exist. This court has thoroughly considered *Vega* in many decisions and determined that it allows the director of health to make a determination as to the general reliability of the breathalyzer test. Further, although the OACDL pointed to *State v.*

*Dugan*, 12th Dist. No. CA2012-04-081, 2013-Ohio-447, specifically the concurring opinion, as support for the proposition that the separation of powers is violated through the director of health's authority, nothing in that opinion changes this court's foregoing analysis or conclusion as to this issue.

{¶24} We note that, in the present case, Yanchar challenged the breath test results of the Intoxilyzer 8000 on several specific grounds and raised separate suppression challenges.  The municipal court granted Yanchar's Motion solely on the grounds stated in *Johnson*, and noted that it would "grant the defense's request to preserve his right to litigate other issues regarding the Intoxilyzer 8000 as well as [other] issues raised in his motion" following an appeal on the issue of general reliability. Therefore, on remand, it will be necessary for the court to hold another hearing to address the other issues raised in Yanchar's Motion to Suppress/Motion in Limine.

{¶25}  The sole assignment of error is with merit.

{¶26}  For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Yanchar's Motion to Suppress/Motion in Limine and dismissing the charge of violating R.C. 4511.19(A)(1)(d) is reversed, and this cause is remanded for further proceedings consistent with this opinion.  Costs to be taxed against appellee.


TIMOTHY P. CANNON, P.J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.


_____


9

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶27} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶28} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶29} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

10

{¶30} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶31} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶32} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶33} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as

11

those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶34}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶35}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against this backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶36}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require

12

evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶37} In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

{¶38} Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶39} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson,* Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where the defense asserts that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case, if the Intoxilyzer 8000 is

13

unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶40} Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators."" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶41} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶42} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state

14

was well aware of what the trial court required when it ordered the state to produce evidence of the Intoxilyzer 8000's reliability,  independent and irrespective of the contents of the motion to suppress.  Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard.  The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶43}  When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible.  Some are harmless; others are not preserved for appellate review).  By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error."  *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶44}  This appeal is centered around a discretionary decision made by the trial court.  As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.